PORTER HOWE *v.* THE TOWN OF CASTLETON.

*Towns. When liable for injuries from insufficiency of highways.*

Under the statute, (Comp. Stat. p. 150 § 32,) if the load does not exceed 10,000 pounds in weight, the town is responsible for all damages arising from the insufficiency of their highways ; but if the load exceeds that weight, however insufficient the highway may be, or whatever may be the degree of care and prudence exercised, and however directly the injury may result from the insufficiency of the road, no action whatever can be sustained against the town.

In determining what constitutes the "load," within the meaning of the statute, reference is to be had only to the *material placed upon the carriage*, which is de-

signed for removal from one place to another, and not to the carriage itself, or to anything used or employed simply as means, by which the removal or transportation of the material is effected.

THIS was an action on the case, brought to recover damages, for an injury to the plaintiff's horse and other property, sustained by reason of the insufficiency and want of repair of a highway in said town of Castleton.

Plea, general issue, and referred, under rule of court, to referees, who reported substantially the following facts :

That on the first day of January, A. D. 1851, the plaintiff was, and for a long time previous thereto had been, engaged in the business of hauling rough blocks of marble from the quarries in West Rutland, to the marble mill in Hydeville, in said Castleton, and that on the day last mentioned, one George H. Ray, was a servant for, and employed by the plaintiff, to drive one of his teams used in said business. That said Ray commenced work for plaintiff on the said first day of January, 1851, and had previously driven a team for the plaintiff, used in the same business, but not at any time within two years previous to said first day of January ; that on said day last mentioned, said Ray drove from West Rutland to Hydeville a four horse team belonging to plaintiff, harnessed to a traverse sled, on which a large block of rough marble was loaded; said sled or sleds weighed 1,310 pounds, and said block of marble 9,885 pounds, which was not an unusual load for the team which said Ray drove. That said block of marble was loaded according to the usual custom, on a rack or rigging attached to the said sleds, and a chain was bound around the rigging and block, and fastened down by a lever. That the sleds were kept together by a reach and an iron bar, running into the bolster of the forward sled. That said block of marble was about eleven and one half feet in length, four feet and six inches wide, and one foot and six inches thick, and was loaded and secured to the carriage with ordinary and reasonable care.

That when said Ray came with his team to Hydeville, he turned his team out of the main road, running westerly through said village, into a road running from Hydeville southerly by the marble mills, the first of which was near the west side of the last mentioned road, and the other of which was a short distance southwesterly from the said first mill ; the said last mentioned road passes

down a steep hill near the first mill, but before arriving at the same. That when said Ray came with his team to the brow of said hill, and as he started to go down the same, the leading horses of the team turned out of the traveled path, a little to the right; said Ray had not then determined to which mill he would take his load; but in going down the hill, he concluded to take the load to the first mill, and for that purpose headed his team more to the right, and in the direction of the first mill. That in going down the hill, said Ray stood on the eveners attached to the pole tongue of the forward sled, the block being so long that he could not stand on the rigging. That the ground was covered with a deep snow. That immediately on his turning the team in the direction of the first mill, but after he had passed the usual track leading from said highway to said mill, the off runner of the forward sled struck against a large block of sawed stone, which then was, and for several months had been, lying in the highway, on the west side of the traveled path, and which then was concealed by the snow.

That when the sled struck against said stone, the chain which bound the block, broke, and the block slid forward, and threw the said Ray off from the eveners, and falling upon the pole tongue of the forward sled, and against one of the horses of the team, broke said tongue, and the whiffletrees attached thereto, and also a leg of the said horse, whereby said horse became of no value. That the ground in the traveled path, and between said path and said stone, was smooth and free from obstructions, but on the east side of said path there was a deep ditch, which had been gullied out by the water. That when said sled struck the stone, the nigh runner was outside of the track for the off runner, in said traveled path, and the distance from said stone to the west side of said path was five feet and six inches, and to the east side of said path it was fourteen feet and six inches. That the road was narrow, and that teams could not pass each other between said stone and the ditch on the east side of the road without difficulty; and that said stone was within the limits of a highway which said town of Castleton was and is liable to keep in repair; and also, that at the time of the accident, the said sleds and team were within the limits of said highway, but out of the usual traveled path of the same. And that said track, to said mill, from said road, was at the time of the accident, obscured or filled with snow, and that the course to the said mill then appeared to be safe and clear.

That if the weight either of said Ray or of said rack are to be taken as part of said load, then it exceeded ten thousand pounds; but that said excess was not a contributing cause of the accident, or injuries thereby sustained.

The referees also found and reported that said stone was an obstruction to the safe and convenient use of said highway, and that the same was thereby insufficient and out of repair—and that said Ray was in the exercise of ordinary care and prudence, and that said insufficiency or want of repair produced the injuries complained of in this action.

The County Court, April Term, 1852—PECK, J., presiding—rendered judgment on said report for the plaintiff.

Exceptions by defendant.

*B. F. Langdon* and *C. L. Williams* for defendant.

The plaintiff cannot recover by reason of the provisions of the 32d sec. of chap. 23 of the Comp. Stat. (p. 180.)

It is not necessary under the provisions of that statute that the excess of weight should be a contributing cause to the injury. The provision is an express and positive one; and the limitation of weight perhaps entirely an arbitrary one; but such as it is, it was exceeded, and the provision of the statute contravened in the case now before the court.

If it were necessary that the excess of weight should contribute to the injury—that it did so, would be inferred from the mere fact of the excess; or at all events, the onus would be on the plaintiff to show that it did not—which he has not done in this case.

Whether you adopt the definition of the word "LOAD" given by Richardson, "*that which is to be borne or carried,*" or that of Webster, "*a burden; that which is laid on or put in any thing for conveyance,*" or whether you confine yourself to the plain and obvious intent of the statute, but one conclusion can, it seems to us, be arrived at, and that is—

That all that the carriage *bears*, or transports, or carries, forms and constitutes a part of the *load*, of "that which is borne or carried," of "that which is laid on or put in" the carriage, "for conveyance," the weight of which is limited.

Supposing the chains merely, with which the block of marble was secured, had exceeded 115 lbs., or the driver had taken on an

additional passenger, would not the load which the carriage would have borne in either of those cases have exceeded 10,000 lbs.? and if so, where will you make the distinction, except between the carriage and that which is extrinsic to, and independent of it?

*Edgerton & Allen* for plaintiff.

The injury complained of was occasioned by the insufficiency of the highway. It did not result from any want of proper care and prudence on the part of the plaintiff's agent, Ray; and the only question for the decision of the court, is a question of construction of sec. 32, of ch. 23, p. 180 of Comp. Stat. The sled with its ordinary rigging constituted the "carriage," within the meaning of the statute, and the block of marble constituted the "load." The driver of the load, and the load itself, are distinct, and the driver makes no part of his loading, in the ordinary and common understanding of the term.

The statute does not limit the entire weight upon the road, or bridge, to 10,000 pounds; to this weight may be added the team, carriage, and driver; and it would seem to be of no importance whether the driver should be *upon* his load, or by its side; the weight upon the bridge or road would be the same in either case.

But the case shows that the "excess of the weight of the carriage and load" above the 10,000 pounds, was not a contributing cause of the accident, or, in the language of the statute, the "damage did not result in consequence of" the excess in weight.

The opinion of the court was delivered by     •

Isham, J. The Comp. Stat. p. 150, sec. 32, provides, "that no "person shall recover against any town, damages sustained on ac- "count of the insufficiency or want of repair of any highway, "which has arisen in consequence of the passing on such highway, "of any carriage bearing a load, exceeding ten thousand pounds in "weight." Under this provision of the act, if the load does not exceed that weight, the risk of accidents, arising from the insufficiency of the highway, rests upon the town, and they are responsible for all damages arising from its insufficiency, or want of repair. If the load exceeds that weight, however insufficient the road may be, or whatever may be the degree of care and prudence exercised on that occasion, and however directly the injury may result from the insufficiency of the road, no action whatever can

Howe *v.* Castleton.

be sustained. Towns are not obliged to construct roads, or keep them in repair, for the transportation of loads thereon, exceeding that weight.

The only question in the case is, was this plaintiff transporting over this road a load exceeding that weight, when this injury was sustained? This is to be determined, by ascertaining the intention of the legislature in the use of the word "*load*," as used in the act. In the construction of statutes, its language is to be understood in its plain and ordinary signification, particularly if they are words of common use. 1 Kent's Com. 514. Ordinarily, when mention is made of a *load*, reference is had only to the *material placed upon the carriage*, and which is designed for removal from one place to another; not to the carriage itself, or to anything used or employed simply as means, by which the removal or transportation of that material is effected; and in this sense, we think, the word as used in the statute, should be construed.

The carriage itself, from the phraseology of the act, is evidently not to be included as a part of the *load;* the same reason will exclude the rack; the purpose for which the rack was used, rendered it a part of the carriage itself. Both were used for the same object, and were equally necessary to sustain and remove the stone, which was placed upon the carriage for removal to its place of destination, and which really constitutes the load, within the meaning of the act. For the same reason, also, the weight of the driver, or person having charge of the horses and load, should not be taken into the account, in ascertaining its weight. His services and care are one of the means used in the transportation of the load, and his position on the carriage may have been necessary in the exercise of proper care and prudence in the government and management of his team.

If these matters are excluded, the case finds that the load did not exceed the weight limited by statute. The plaintiff has consequently a right to regard the town as responsible for such damages as he has sustained from the insufficiency of the road, or its want of repair; and as the referees have found as facts in the case, that the road was insufficient, that the injury arose from that cause, and that there was no want of care and prudence in managing the team and load, we think the plaintiff is entitled to a judgment on this report.

The judgment of the County Court is affirmed.