MAGNAVOX CONSUMER ELECTRON-
ICS, Plaintiff-Appellee,

v.

John K. KING, Commissioner of Reve-
nue for the State of Tennessee, et
al., Defendants-Appellants.

Supreme Court of Tennessee,
at Knoxville.

Feb. 24, 1986.

Michael W. Catalano, Asst. Atty. Gen.,
Nashville, (W.J. Michael Cody, Atty. Gen.
and Reporter, of counsel), for defendants-
appellants.

G.P. Gaby, Milligan, Coleman, Fletcher,
Gaby, Kilday & Woods, Greeneville, for
plaintiff-appellee.

## OPINION

HERSCHEL P. FRANKS, Special Jus-
tice.

The principal issue presented by this ap-
peal is whether payments made by plain-
tiff-lessee pursuant to a vehicle lease en-
tered between plaintiff and the lessor in
the State of Indiana are subject to use tax
pursuant to T.C.A., § 67–6–210.[1]

On August 8, 1969, plaintiff entered an
agreement with Fort Wayne Leasing Com-
pany, an Indiana corporation, leasing a
fleet of trucks. The lease was executed in
Indiana and plaintiff took possession of the

---

1. The applicable statutory provision at the time
of assessment by the state provided:

T.C.A., § 67–6–210. *Use of property imported
by dealer—Exemptions.* (a) On all tangible per-
sonal property imported, or caused to be im-
ported from other states or foreign country, and
used by him, the "dealer" as defined in § 67–6–
102(4), shall pay the tax imposed by this chapter
on all articles of tangible personal property so
imported and used, the same as if the articles

had been sold at retail for use or consumption
in this state. For the purposes of this chapter,
the use, or consumption, or distribution, or stor-
age to be used or consumed in this state of
tangible personal property shall each be equiva-
lent to a sale at retail, and the tax shall thereup-
on immediately levy and be collected in the
manner provided herein, provided there shall be
no duplication of the tax in any event.

.    .    .    .    .

trucks in that state. The agreement provided plaintiff would pay a fixed rental for each truck plus a fixed rate per mile for the mileage the trucks were operated by the lessee. The lessor, under the terms of the lease, was required to furnish all fuel for the operation of the trucks. The trucks were based in Greeneville, Tennessee and bore the Magnavox logo and were utilized to transport plaintiff's products throughout the United States. The parties stipulated that the trucks were actually operated in states other than the State of Tennessee 82.7 per cent of the time.

Following an audit for the period of June 1, 1976 through May 31, 1978, the Department of Revenue assessed a tax deficiency against the plaintiff of $128,913.11 plus $32,229.51 in penalties and $13,484.06 in interest, for a total of $174,626.68.[2] The amount was paid under protest and the instant suit was filed to recover the payment of taxes.

The trial court determined the payments under the lease were subject to the use tax but reduced the amount of tax owing since 34 per cent of the payments represented fuel consumption and T.C.A., § 67–6–329 exempts fuel from the use tax.[3]

Plaintiff contends no part of the lease payments is subject to use tax and bases its argument primarily on T.C.A., § 67–6–201,[4] which it insists limits taxation of leases to those entered within this state. While T.C.A., §§ 67–6–201 and 67–6–204[5], read together, evidence the legislature's intent to tax proceeds of leases entered or executed within this state, and since the leases involved were executed in Indiana, these sections are not controlling.

■ The commissioner, however, imposed the tax deficiency on the authority of T.C.A., § 67–6–210. This section sets forth three elements necessary to the imposition of the use tax: (1) an "importation" of "tangible personal property", (2) by a dealer and (3) use of the property. The leasing of the trucks and bringing them into this state constituted an importation from another state. Moreover, plaintiff is a "dealer" under this section, since T.C.A., § 67–6–102(4)(F) expressly defines a "dealer" as every person who "[i]s the lessee or renter of tangible personal property ... and who pays to the owner of such property a consideration for the use or possession of such property without acquiring title thereto...." The issue thus becomes whether the plaintiff "used" the property within the meaning of T.C.A., § 67–6–210(a).

T.C.A., § 67–6–102(18) defines "use" as "the exercise of any right or power over tangible personal property incident to the ownership thereof...."

Tennessee's statutory taxation scheme indicates a legislative intent to impose the use tax on lessees, including those who lease property outside of this state for use in Tennessee. T.C.A., § 67–6–201 declares as a "taxable privilege" the use or consumption "in this state [of] any item of tangible personal property as defined in this chapter ..." and "sale" is defined as

2. A part of the tax liability arose from another transaction, which involved the plaintiff's purchase in 1977 of an oil storage tank from Buffalo Tank Division of Bethlehem Steel Corporation.

3. § 67–6–329. *Miscellaneous exemptions.*—The sale at retail, the use, the consumption, the distribution, and the storage for use or consumption in this state of the following tangible personal property is specifically exempted from the tax imposed by this chapter:
  (1) Gasoline as defined by statute in Tennessee, upon which a privilege tax per gallon is paid, and not refunded, ...
  (2) Motor vehicle fuel now taxed per gallon by part 8, chapter 3 of this title;

4. The section provides, in pertinent part:
  It is declared to be the legislative intent that every person is exercising a taxable privilege ... who uses or consumes in this state any item or article of tangible personal property as defined in this chapter, ... or who leases or rents such property, either as lessor or lessee, within the state of Tennessee.

5. T.C.A., § 67–6–204. *Lease or rental of property.*—It is declared to be the intention of this chapter to impose a tax on the gross proceeds of all leases and rentals of tangible personal property in this state where the lease or rental is a part of the regularly established business, or the same is incidental or germane thereto....

"any transfer of title or possession ... lease or rental". T.C.A., § 67–6–102(14)(A).

As this court observed in *Woods v. M.J. Kelley Co.*, 592 S.W.2d 567 (Tenn.1980), "[t]he taxable privilege of use extends to the 'utilization of property for profit-making purposes.'" *Id.*, at 571. The statutory definition of "use" provides, however, that only those uses "incident to the ownership" of the tangible personalty will be taxable. In construing substantially the same language, the Rhode Island Supreme Court in *Great Lakes Dredge and Dock Co. v. Norberg*, 117 R.I. 600, 369 A.2d 1101 (1977), said the phrase "does not require total or even substantial control; the exercise of any 'right or power' over tangible property constitutes a taxable 'use' of that property." 369 A.2d at 1104. *But cf. Chrysler Corp. v. City of New Orleans*, 238 La. 123, 114 So.2d 579 (1959) ("The rights of use and possession which Chrysler had were derived from its contract of lease ... and were not incident to ownership....") 114 So.2d 586.

In the instant case, the trucks were based and serviced at Greeneville, Tennessee and operated by plaintiff's employees. The lease agreement provides "customer shall have the right to operate and control said vehicles in such manner as though ownership and title in said vehicles was vested exclusively with said customer." Plaintiff exercised rights in the leased vehicles normally "incident to ownership" save the acquisition of title. Plaintiff's use of the trucks under the lease falls within the ambit of T.C.A., § 67–6–210.

■ The commissioner contends the "entire lease payment is subject to the use tax", and the trial court improperly ordered a refund of that portion of the use tax attributable to the cost of fuel for the operation of the trucks.

The lease agreement provides the owner of the trucks pays the fuel cost but plaintiff argues an estimated 34 per cent of the total lease charges per mile represents fuel costs and under the "exemptions" section of the sale and use tax statutes, the use or

consumption of "motor vehicle fuel" "upon which a privilege tax per gallon is paid, and not refunded," is exempt from the sales or use tax. T.C.A., § 67–6–329(1).

T.C.A., § 67–6–210 states, for purposes of use and sales tax, the use of imported tangible personal property "shall ... be equivalent to a sale at retail, and the tax shall thereupon immediately levy...." In *Central Transport Co. v. Atkins*, 202 Tenn. 512, 305 S.W.2d 940 (1957), involving a similarly structured lease where the sales rather than the use tax was held applicable, the court stated the agreed rental price constituted the base for tax purposes. In *Saverio v. Carson*, 186 Tenn. 166, 208 S.W.2d 1018 (1948), this court, applying the sales tax to the gross rental, held the tax must be paid on the final rental price and any attempted separation of charge for services included in the gross rental price would result in confusion in administration of the tax Act. Those cases are relevant and applicable to the issue since T.C.A., § 67–6–210 equates "use" with "sale at retail". Moreover, there is no double taxation since the gas tax was paid by the lessor who, under the terms of the lease, was required to furnish the fuel and the use tax imposed by the commissioner is upon the plaintiff-lessee. We modify the judgment of the trial court to the extent that it allowed a credit for the fuel consumption against the gross proceeds of the lease, by disallowing credit.

■ Finally, the commissioner contends, contrary to the trial court's determination, the fuel tank imported into this state by the plaintiff was tangible personal property subject to the use tax under T.C.A., § 67–6–210. The tank, with a capacity of 500,000 gallons, was installed on plaintiff's property by Bethlehem Steel in 1977.

The evidence establishes the fuel tank is mounted on a concrete pad and secured by four metal rods which "protrude out of the concrete up the side of the tank to keep it from shifting." The tank is not secured to the metal standards because expansion or contraction of the tank "would literally rip

the bolts out of the concrete." A witness conceded that while the tank could be moved, "it would have to be moved as if it were a building", and he further explained that the tank was connected to a building by a steel pipe.

The commissioner relies heavily upon *Harry J. Whelchel Co. v. King,* 610 S.W.2d 710 (Tenn.1980), for the proposition that the tank in the instant case constitutes "tangible personal property". *Whelchel* held grain bins erected on a farm did not become real property. However, the grain bins were easily disassembled and of far less capacity than the fuel tank involved here. Moreover, there was no indication that the bins were attached to any other structure or that they were intended to be permanent, which are factors not present with respect to plaintiff's fuel tank.

The test for determining whether a chattel is a fixture was stated in *Hickman v. Booth,* 131 Tenn. 32, 173 S.W. 438 (1914):

> In Tennessee only those chattels are fixtures which are so attached to the freehold that, from the intention of the parties and the uses to which they are put, they are presumed to be permanently annexed, or a removal thereof would cause serious injury to the freehold. [Citations omitted.] The usual test is said to be the intention with which a chattel is connected with realty. If it is intended to be removable at the pleasure of the owner, it is not a fixture.
>
> *Id.,* at 34.

The evidence does not preponderate against the trial judge's determination that the tank was a fixture and thus not a taxable item. The tank is attached to a permanent structure and securely anchored to the freehold. Its sheer size, as evidenced from the exhibits, indicates that it was not intended to be "removable at the pleasure of the owner."

We affirm the judgment of the trial court as modified herein and remand for entry of judgment. The cost incident to the appeal is assessed one-half to each party.

BROCK, C.J., and COOPER, FONES and HARBISON, JJ., concur.