**PENSKE TRUCK LEASING CO., L.P., Assignee and Successor in Interest to Gelco Corp., Appellant,**

v.

**Joe B. HUDDLESTON, Commissioner of Revenue, State of Tennessee, Successor in Office to Charles E. Cardwell, who was Successor in Office to Dudley W. Taylor, Appellee.**

Supreme Court of Tennessee, at Nashville.

Sept. 10, 1990.

Charles A. Trost, J. Leigh Griffith, Joseph A. Woodruff, Waller, Lansden, Dortch and Davis, Nashville, for appellant.

Charles W. Burson, Atty. Gen. and Reporter, William P. Sizer, Asst. Atty. Gen., Nashville, for appellee.

OPINION

COOPER, Justice.

This action was brought by Penske Truck Leasing Company, a limited partnership, to recover sales and use taxes paid under protest. The chancellor found that the taxes were properly assessed, and de-

nied the relief sought. Plaintiff has appealed to this Court, insisting primarily that the trial court erred in holding that the sales of fuel by plaintiff to lessees were part of the gross proceeds of the lease agreements and subject to sales and use taxes.

In 1987, the Commissioner determined that plaintiff owed sales and use taxes, including interest, in the total amount of $1,238,122.79. The tax assessment was on:

(1) Advance Fuel Billings—estimated payments for future fuel purchases by long-term truck lessees who had contracted to purchase fuel from plaintiff;

(2) Fuel Reconciliations—credits or debits issued to the long-term truck lessees on monthly reconciliation of estimated payments (Advance Fuel Billings) against actual fuel purchases;

(3) Drop-in Fuel Sales—fuel sales to lessees who had not contracted to purchase fuel from plaintiff;

(4) Top–Off Fuel Sales—fuel sales to short-term truck lessees who were obligated to return the truck with a full tank of fuel; and

(5) Contract Maintenance Fuel Sales—fuel sales to non-lessees who had a truck maintenance contract with plaintiff and who had also contracted to purchase fuel from plaintiff.

Plaintiff paid the assessment under protest, and filed a request for refund. When the request for refund was denied, the present action was filed.

Prior to trial, the Commissioner admitted error in the computation of the sales and use taxes due and that, as the result, plaintiff was entitled to a refund of $494,559.79. Plaintiff, in turn, conceded that an assessment of $39,050.00 on non-revenue and maintenance items was proper. This left $704,402.00 in dispute, of which $485,152.00 was the tax on Advance Fuel Billings, $79,-631.00 on Fuel Reconciliations, $66,436.00 on Top–Off Fuel Sales, $70,817.00 on Drop-in Fuel Sales, and $2,316.00 on Contract Maintenance Fuel Sales.

At trial, the Commissioner conceded that the assessments on top-off fuel sales, drop-in fuel sales, and contract maintenance fuel sales were incorrect, leaving at issue only the tax assessments on advance fuel billings and fuel reconciliations.

Plaintiff leases its vehicles to businesses and individuals under a lease and service agreement which provides for the payment of a fixed rate for use of the leased vehicle, plus a fixed mileage rate that includes the cost of maintenance. Plaintiff paid sales and use taxes on these revenues.

Under the lease and service agreement, the lessee also is given the option of purchasing fuel for the leased vehicles from plaintiff, or of purchasing fuel from other vendors. A lessee who initially agrees to lease a vehicle and to purchase fuel from plaintiff can, during the lease period, decide to change the fuel contract without any modification of the fixed lease payments or the fixed mileage payments. Likewise, if a lessee leases a vehicle and initially chooses not to purchase fuel from plaintiff, the lessee subsequently can decide to enter into a fuel agreement with plaintiff without any change in payments under the vehicle lease agreement. In those instances where a lessee chooses the option of purchasing fuel from appellant, an estimate of the fuel cost is agreed upon by the parties and the lessee makes payment in advance of actual fuel purchases (Advance Fuel Billings). These payments are reconciled monthly against actual fuel purchases (Fuel Reconciliations). Revenues generated by the fuel purchase option are accounted for by plaintiff's fuel sales division and are billed separately from the truck lease revenues.

In assessing sales and use taxes on advance fuel billings and fuel reconciliations, the Commissioner relied on *Magnavox Consumer Electronics v. King*, 707 S.W.2d 504 (Tenn.1986), wherein the Court held that where fuel costs are included in the agreed rental price of equipment, the entire lease payment is subject to the use tax. The Commissioner insists that the fuel costs in this case are part of the basic lease agreement and thus taxable under T.C.A. § 67–6–204(a), which imposes a tax on the "gross proceeds of ... leases." Plaintiff does not take issue with the holding in

*Magnavox,* but insists that unlike *Magnavox* fuel costs were not included in the agreed rental price of the equipment. Plaintiff's basic argument is that fuel costs are covered under a separate agreement and are exempt from sales and use taxes under T.C.A. § 67–6–329(a), which specifically exempts gasoline sales, upon which a privilege tax per gallon has been paid, and motor vehicle fuel, on which a per gallon tax has been paid. There is no question but that plaintiff paid the required privilege and gallonage taxes on the sale and use of gasoline and motor vehicle fuel sold to lessees.

An agreement can be either an entire contract or a severable contract according to the intention of the parties, and the fact that divisible parts are included within the same document does not preclude them from being considered and enforced as separate contracts. *Bradford & Carson v. Montgomery Furniture Co.,* 115 Tenn. 610, 92 S.W. 1104 (Tenn.1906); *Brockett v. Pipkin,* 25 Tenn.App. 1, 149 S.W.2d 478 (1940); 17A C.J.S., Contracts, § 331. The intention of the parties is to be determined by a fair construction of the terms and provisions of the contract, by the subject matter to which it has reference, by the circumstances of the particular transaction giving rise to the question, and by the construction placed on the agreement by the parties in carrying out its terms. *Brockett v. Pipkin, supra.*

Using these basic criteria, and considering the evidence and stipulations filed, we are convinced that the parties to the lease agreements intended and understood that the lease of equipment was separate and apart from the fuel sales agreement, though they are included in the same document. The agreement for the lease of equipment, and its cost, and the agreement covering fuel sales are readily distinguishable, and neither agreement is dependent upon the other. In the basic lease agreement, plaintiff is not required to furnish the fuel used in the leased equipment, nor is the cost of fuel included in either the fixed weekly rental rate or the fixed mileage rate, as it was in *Magnavox, supra.*

The lessee is given the option of having plaintiff furnish the fuel or of obtaining it from an outside source. The exercise of the option either way does not affect the weekly rental or mileage cost of the leased equipment. If the lessee elects to purchase fuel from plaintiff, the lessee later can cancel the fuel agreement, without affecting in any way the equipment lease cost. On default of payment of fuel charges by a lessee, plaintiff can elect to terminate the fuel agreement without terminating the lease of equipment agreement. There is also evidence that where a lessee has sought protection under the bankruptcy law, plaintiff has filed separate proof-of-claim forms for truck lease payments due and for fuel sales payments due. And lessees, who are debtors-in-possession, on occasion have reaffirmed the truck lease agreement and rejected the fuel purchase agreement. Also the record shows that lease costs and fuel costs are accounted for and billed separately by different divisions of plaintiff.

Having concluded that the lease of equipment agreement and the fuel sales agreement are separate parts of a divisible contract, we think it was error for the Commissioner and the trial court to include receipts from the sale of fuel in determining the gross receipts from the lease of equipment that would be subject to sales and use taxes under T.C.A. § 67–6–204(a). Fuel sales receipts must be considered separately from the fixed rental rate of the equipment and the fixed mileage rate. And where, as in this case, all fuel taxes have been paid on the gasoline and motor vehicle fuel sold, the receipts are exempt from sales and use taxes. *See* T.C.A. § 67–6–329(a). *See also, Material Contractors, Inc. v. Donahue, Tax Commissioner,* 14 Ohio St.2d 19, 235 N.E.2d 525 (1968), wherein under circumstances markedly similar to those in this case, the Ohio Supreme Court held that fuel sales were not part of the basic rental agreement and were exempt from sales and use taxes.

The judgment of the trial court denying recovery by the plaintiff of sales and use taxes paid under protest on assessments on

advance fuel billings and fuel reconciliations is reversed. The cause is remanded for a determination by the trial court of the amount to be paid plaintiff by the defendant. Costs will be paid by defendant.

DROWOTA, C.J., and FONES, O'BRIEN and DAUGHTREY, JJ.