# IN THE COURT OF APPEALS OF TENNESSEE
# MIDDLE SECTION AT NASHVILLE

**FILED**

**November 14, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

LAIDLAW ENVIRONMENTAL          )
SERVICES OF SOUTH CAROLINA,    )
INC.,                          )
                               )
    Plaintiff/Appellant,       )
                               )  Davidson Chancery
                               )  No. 95-2114-I
                               )
VS.                            )
                               )  Appeal No.
                               )  01A01-9610-CH-00479
THE METROPOLITAN GOVERNMENT    )
OF NASHVILLE AND DAVIDSON      )
COUNTY,                        )
                               )
    Defendant/Appellee.        )


## APPEAL FROM THE CHANCERY COURT FOR DAVIDSON COUNTY
## AT NASHVILLE, TENNESSEE

## THE HONORABLE IRVIN H. KILCREASE, JR., CHANCELLOR


For the Plaintiff/Appellant:        For the Defendant/Appellee:

Thomas V. White                 Stephen O. Nunn
John P. Williams                Metropolitan Attorney
Tune, Entrekin & White
Nashville, Tennessee


## AFFIRMED AND REMANDED


WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal involves a dispute arising out of the performance of a contract to dispose of fly ash generated by the Nashville Thermal Transfer plant. After agreeing to increase the amount of ash it removed from the plant each day, the disposal company filed a breach of contract action against the Metropolitan Government in the Chancery Court for Davidson County. It alleged that it was entitled to be compensated based on a minimum charge per container rather than on the weight of the ash actually removed. The trial court granted the Metropolitan Government's motion for summary judgment after determining that the parties' original contract did not specify a minimum payment for each container removed and that the parties had not amended their contract to permit these charges. The disposal company asserts on this appeal that the trial court should not have granted the summary judgment because of material factual disputes concerning the meaning of certain contract terms. We have determined that the trial court correctly interpreted the contract as a matter of law and, therefore, affirm.

## I.

In July 1994, the Metropolitan Government of Nashville and Davidson County solicited bids for the removal of the fly ash generated by the Nashville Thermal Transfer plant.[1] The invitation stated that the contractor would be required to provide for the continuous collection and removal of approximately twenty tons of fly ash each day, although the daily amount could vary between fifteen and twenty-five tons. It also stated that the contractor would be required to provide twenty-cubic-yard containers to remove the fly ash.[2] The invitation requested bids based on the cost per ton for removing approximately twenty tons of fly ash each day and stated that the compensation would be determined by the weight of the fly ash, measured by the thermal plant's scales.

Laidlaw Environmental Services of South Carolina, Inc. submitted a bid to remove the fly ash. It proposed to remove fifteen to twenty-five tons of fly ash each

---

[1]Fly ash consists of suspended particles, charred paper, dust, soot, and other partially oxidized matter carried out of a furnace's chimney by the waste gas stream. *See* 40 C.F.R. §§ 240.101(h), 423.11(e) (1997); *Webster's Third New International Dictionary* 879 (1971).

[2]The weight of the fly ash could vary depending on the output of the plant and the amount of water needed to weigh down the ash for dust control.

day at a cost of $205.60 per ton. Because it was unclear how much fly ash would be removed each day and how much fly ash could be placed in a twenty-cubic-yard container, Laidlaw included a provision in its bid that it would be paid for at least fifteen tons per load, even when the load weighed less than fifteen tons.[3]

On July 28, 1994, the Metropolitan Government and Laidlaw signed a contract for the removal of fly ash from the thermal plant.[4] The initial term of the contract was six months; however, the contract permitted the Metropolitan Government to obtain two six-month extensions. The contract obligated Laidlaw to remove fifteen to twenty-five tons of fly ash each day. It also required Laidlaw to keep at least two spare containers at the plant at all times. In return, the Metropolitan Government agreed to be billed for each load and to pay Laidlaw $205.60 per ton. The Metropolitan Government also agreed to compensate Laidlaw for at least fifteen tons per load. The contract documents contained standard provisions stating that changes or modifications to the contract must be in writing and must comply with "section 4.24.020 of the Metropolitan Code of Laws."[5]

The parties soon discovered that the twenty-cubic-yard containers could not physically hold fifteen tons of fly ash and that the plant was generating enough ash each day to fill between two and four containers. Since Laidlaw had been removing only one container each day, a large number of containers of fly ash began to accumulate at the plant. In order to resolve the problem, Jack Tucker, representing the Metropolitan Government, and Tom Mastalerz, representing Laidlaw, agreed in August 1994 that Laidlaw would begin removing more than one container each day as long as the weight of the truck did not exceed 40,000 pounds.

Soon after the conversation between Mr. Mastalerz and Mr. Tucker, Laidlaw began using one truck to remove two containers of fly ash each day. It also began submitting bills to the Metropolitan Government treating each container as a separate load and seeking the minimum fifteen-ton fee for each container. While the

---

[3]Laidlaw's exact quote was "15-25 tons/day - Fly Ash (15 ton/min. ld.) $205.60/ton."

[4]The contract documents included the contract itself, the invitation to bid, Laidlaw's response to the invitation to bid, Laidlaw's certificate of insurance, and Laidlaw's addendum to the contract.

[5]Metropolitan Gov't of Nashville and Davidson County, Tennessee, Code § 4.24.020 (1992) ("Metropolitan Code") requires that modifications to written city contracts must be approved by the purchasing agent, the Legal Department, and the Mayor. If the contractual modification requires the expenditure of additional city funds, this section also requires approval by the Director of Finance.

Metropolitan Government was willing to pay Laidlaw for the actual number of tons of fly ash removed, it refused to pay the double minimum Laidlaw demanded.

In July 1995, Laidlaw sued the Metropolitan Government in the Chancery Court for Davidson County seeking $169,620 in allegedly unpaid fees for the fly ash removed from the thermal plant. The Metropolitan Government then filed a "motion to dismiss or in the alternative for summary judgment."[6] Laidlaw responded to the motion by filing Mr. Mastalerz's affidavit detailing his conversations and agreement with Mr. Tucker concerning the removal of additional containers. The Metropolitan Government countered by submitting a copy of Metro Code § 4.24.020 which requires modifications in written contracts to be approved by various city purchasing, legal, and accounting officials. On February 26, 1996, the trial court granted the Metropolitan Government's motion and dismissed Laidlaw's complaint.

Laidlaw filed a timely Tenn. R. Civ. P. 59.04 motion to alter or amend the order dismissing its complaint. It supported its motion with the affidavit of L. E. Wilson, an environmental engineer and solid waste management consultant. Mr. Wilson opined that the term "load" used in Laidlaw's contract with the Metropolitan Government referred to a single container and that "Laidlaw is entitled to be paid on the basis of loaded roll-off containers received at the landfill regardless how they were transported." On May 21, 1996, the trial court filed a memorandum and order denying Laidlaw's motion to alter or amend. The trial court reasoned that Laidlaw was not entitled to recover, even if Mr. Wilson's interpretation of the word "load" was correct, because the purported contract modification was not in writing and had not been approved by the appropriate city officials.

## II.

Ambiguities in the procedural posture of this case in the trial court require us to first identify the appropriate standard of appellate review. The Metropolitan Government's opening motion requested relief under either Tenn. R. Civ. P. 12.02(6)

---

[6]The Metropolitan Government's motion does not "state with particularity the grounds therefor" as required by Tenn. R. Civ. P. 7.02(1). We assume that the grounds were set out in the memorandum of law accompanying the motion; however, as provided in Tenn. R. App. P. 24(a), this memorandum has not been included in the appellate record. The record likewise does not contain any of the evidentiary materials that might have been attached to the memorandum.

or Tenn. R. Civ. P. 56. While Laidlaw's response relied on evidentiary materials outside the pleadings, the February 26, 1996 order did not state whether the trial court had considered Laidlaw's evidentiary materials[7] or whether it was treating the Metropolitan Government's motion as a motion to dismiss or a motion for summary judgment. Both Laidlaw and the Metropolitan Government filed additional evidentiary materials in support of and in opposition to Laidlaw's Tenn. R. Civ. P. 59.04 motion. While the trial court's May 21, 1996 memorandum and order specifically refers to these evidentiary materials, it does not specifically address whether the Metropolitan Government's motion is a motion to dismiss or a motion for summary judgment.

The differences between a Tenn. R. Civ. P. 12.02(6) dismissal and a Tenn. R. Civ. P. 56 dismissal are not merely academic. Motions to dismiss pursuant to Tenn. R. Civ. P. 12.02(6) are rarely granted. *See Dobbs. v. Guenther,* 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992). They challenge the sufficiency of the complaint, *see Cook v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn. 1994), and should be granted only when the complaint states no facts that would entitle the claimant to relief. *See Fletcher v. Board of Prof'l Responsibility*, 915 S.W.2d 448, 450 (Tenn. Ct. App. 1995). Courts considering these motions must take all the well-pleaded factual allegations in the complaint as true and must construe the complaint liberally in the plaintiff's favor. *See Cook v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d at 938; *Rampy v. ICI Acrylics, Inc.*, 898 S.W.2d 196, 198 (Tenn. Ct. App. 1994).

On the other hand, motions for summary judgment provide an expeditious and inexpensive means for concluding litigation when there are no material factual disputes and when the dispositive issues involve questions of law. *See Alexander v. Memphis Individual Practice Ass'n*, 870 S.W.2d 278, 280 (Tenn. 1993). When reviewing a summary judgment motion, the courts view the evidence in the light most favorable to the non-moving party and must deny the motion if there is any dispute as to the material facts or if there is any doubt as to the conclusions to be drawn from the facts. *See Byrd v. Hall*, 847 S.W.2d 208, 210-11 (Tenn. 1993). Appellate courts reviewing an order granting a summary judgment do not presume that the trial court's

---

[7]Since the trial court's February 26, 1996 order recites that it considered the "entire record herein," we presume that the trial court did consider Laidlaw's original evidentiary materials filed in opposition to the Metropolitan Government's motion.

decision was correct, *see City of Tullahoma v. Bedford County*, 938 S.W.2d 408, 412 (Tenn. 1997), but rather make a fresh determination of whether Tenn. R. Civ. P. 56 has been satisfied. *See Hembree v. State*, 925 S.W.2d 513, 515 (Tenn. 1996); *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991).

Tenn. R. Civ. P. 12.02(6) requires that a motion to dismiss must be treated as a motion for summary judgment if "matters outside the pleading are presented to and not excluded by the [trial] court." Trial courts have discretion to decide whether or not to consider evidentiary materials beyond the pleadings,[8] but if they decide to consider these materials, they must treat the motion as one for summary judgment. *See Hixson v. Stickley*, 493 S.W.2d 471, 473 (Tenn. 1973); *Pacific Eastern Corp. v. Gulf Life Holding Co.*, 902 S.W.2d 946, 952 (Tenn. Ct. App. 1995). Once conversion occurs, all subsequent consideration of the motion must comply with the procedural requirements applicable to motions for summary judgment.

Because of the significant procedural and substantive differences between motions to dismiss and motions for summary judgment, the trial courts should give the parties fair notice of the changed status of the motion and a reasonable opportunity to present evidence either in support of or in opposition to the summary judgment motion. *See* 2A James W. Moore et al., *Moore's Federal Practice and Procedure* ¶ 12.09[3] (2d ed. 1995); 5A *Federal Practice and Procedure*, § 1366, at 501. This notice eliminates the possibility of confusion and misunderstanding concerning the posture of the proceedings. However, failure to give this notice is not reversible error if the parties had actual notice of the conversion of the motion and were not otherwise prejudiced by the lack of formal notice. *See Nuclear Transp. & Storage v. United States*, 890 F.2d 1348, 1351 (6th Cir. 1989); 2A *Moore's Federal Practice and Procedure* ¶ 12.09[3]; 5A *Federal Practice and Procedure* § 1366, at 506.

When the trial court does not state whether it is converting a motion to dismiss to a motion for summary judgment, we must examine the trial court's decision and the record to determine whether it considered factual materials beyond the parties'

---

[8]The exercise of the trial court's discretion should be guided by considering whether converting the motion will likely facilitate the disposition of the case. *See* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366, at 493 (2d ed. 1990).

pleadings. If we determine that the trial court considered these materials, then we must review the order dismissing the complaint as if it were a summary judgment. *See Sutton v. Davis*, 916 S.W.2d 937, 938 (Tenn. Ct. App. 1995); *Pacific Eastern Corp. v. Gulf Life Holding Co.*, 902 S.W.2d at 952.

Both parties supported their arguments with evidentiary materials beyond their pleadings. While the order dismissing the complaint does not state explicitly that the trial court considered Laidlaw's evidentiary materials and converted the motion to one seeking a summary judgment, it recites in general terms that the trial court's decision was based on the "entire record herein." Additionally, the later memorandum and order denying Laidlaw's motion to alter or amend analyzes the new evidentiary materials Laidlaw submitted after the original order of dismissal. Accordingly, we have concluded that the trial court considered the evidentiary materials submitted by the parties and, therefore, that the order of dismissal should be viewed as one granting a summary judgment.

### III.

Laidlaw's principle argument is that the trial court should not have granted the Metropolitan Government's summary judgment motion because of the genuine factual disputes concerning the meaning of the word "load" as it was used in the contract. It asserts that the term "load" is ambiguous and, therefore, that the fact-finder must go beyond the four corners of the contract to discern the parties' intended meaning. Since we have determined that the contracting parties' intentions can be gleaned from the four corners of their agreement, the parole evidence concerning the parties' respective understanding of the meaning of the term "load" was immaterial.

### A.

When called upon to construe a written contract, the court's task is to ascertain and give effect to the contracting parties' intentions by fairly construing the terms of their written agreement. *See Penske Truck Leasing Co. v. Huddleston*, 795 S.W.2d 669, 671 (Tenn. 1990); *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975). The court must construe a contract as written and

is not at liberty to make a new contract for parties who have spoken for themselves. *See Petty v. Sloan*, 197 Tenn. 630, 640, 277 S.W.2d 355, 359 (1955); *Hillsboro Plaza Enters. v. Moon*, 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993). It is the court's responsibility to enforce contracts according to their plain terms without favoring either contracting party. *See Cocke County Bd. of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985); *Heyer-Jordan & Assocs., Inc. v. Jordan*, 801 S.W.2d 814, 821 (Tenn. Ct. App. 1990).

If a contract's language is unambiguous, the courts must enforce the contract according to its terms. *See Cummings v. Vaughn*, 911 S.W.2d 739, 742 (Tenn. Ct. App. 1995). Determining whether a contractual provision is ambiguous is a question of law. *See Anderson v. DTB Corp.*, App. No. 89-172-II, 1990 WL 33380, at *2 (Tenn. Ct. App. Mar. 28, 1990) (No Tenn. R. App. P. 11 application filed). It requires the court to construe the provision at issue in light of the entire agreement, *see Cocke County Bd. of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d at 237, and to give the words their common, ordinary meaning. *See Moore v. Life & Cas. Ins. Co.*, 162 Tenn. 682, 686, 40 S.W.2d 403, 404 (1931); *Wilson v. Moore*, 929 S.W.2d 367, 373 (Tenn. Ct. App. 1996). A contract should be found to be ambiguous only when its meaning is uncertain or when it can fairly be construed in more ways than one. *See Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975); *Gredig v. Tennessee Farmers Mut. Ins. Co.*, 891 S.W.2d 909, 912 (Tenn. Ct. App. 1994).

**B.**

After the trial court granted the Metropolitan Government's motion for summary judgment, Laidlaw requested that the trial court revisit its decision based on Mr. Wilson's affidavit concerning the meaning of the word "load." One apparent purpose of this affidavit was to convince the trial court that the word "load" was a term of art in the waste management business with a meaning different than its common, ordinary meaning. Since Mr. Wilson's affidavit does not indicate that he played a role in the formation of the contract between Laidlaw and the Metropolitan Government, the affidavit does not affirmatively show that Mr. Wilson is competent to testify about either party's intentions and understandings when they used the word "load" in their agreement.

Another apparent purpose of introducing Mr. Wilson's affidavit was to create a material factual dispute that would provide a sufficient basis for denying the summary judgment. This tactic, while clever, avails Laidlaw little because we have determined that the contract is clear and, that we can ascertain the parties' agreement from the contract documents themselves. Neither the parties nor the court may create contractual ambiguity when none exists. *See Edwards v. Travelers Indem. Co.*, 201 Tenn. 435, 441, 300 S.W.2d 615, 617-18 (1957); *Cookeville Gynecology & Obstetrics, P.C. v. Southeastern Data Sys., Inc.*, 884 S.W.2d 458, 462 (Tenn. Ct. App. 1994).

## C.

We see no need to go beyond the four corners of the contract documents in this case because the payment provisions are unambiguous. Considering these provisions in light of the entire agreement, the contract provides that Laidlaw's compensation will be based on the weight of the fly ash, not the number of containers removed from the plant. The word "load" in this context refers to the fly ash and not the containers in which the fly ash is placed for disposal.

This construction is consistent with the common meaning of the word "load" and is harmonious with the three provisions in the contract where the word "load" appears. In its most common usage, "load" connotes "whatever is put in a . . . vehicle . . . for conveyance," *Webster's Third New International Dictionary* 1325 (1971), or "[t]hat which is laid upon a . . . vehicle to be carried." 8 *The Oxford English Dictionary* 1062 (2d ed. 1989).[9] Thus, the requirement that "all loads must be weighed on Owner's scales" means that each truck leaving the plant will be weighed to determine the weight of the fly ash being removed.[10] The provision in the addenda entitling Laidlaw to be billed on a "per load basis" means that Laidlaw will bill the Metropolitan Government based on the amount of fly ash loaded on each truck leaving the plant. Finally, the provision granting Laidlaw a fifteen ton per load

---

[9]In a case involving a contract for the sale of a load of barley, a New York court found that the term "load" referred to the carrying capacity of the conveyance usually used to transport grain. *See Flanagan v. Demarest*, 26 N.Y. Super. (3 Rob.) 173, 180-81 (1865).

[10]The Vermont Supreme Court has held that the term "load" refers to the weight of the material placed on the conveyance, not including the weight of the conveyance itself. *See Howe v. Town of Castleton*, 25 Vt. 162, 167 (1853).

minimum payment means that Laidlaw is entitled to receive payment for a fifteen-ton load even when one of its trucks is loaded with less than fifteen tons of fly ash.[11]

## IV.

Laidlaw's alternative argument is that the Metropolitan Government should be estopped from denying that Laidlaw is entitled to collect the minimum payment for each container of fly ash because a city employee agreed to "interpret" the contract to require compensation on this basis. While this argument gives us some pause, we have determined that it must fail for two reasons. First, interpreting the contract is unnecessary because the contract's provisions are clear. Second, the "interpretation" relied on by Laidlaw is actually a modification of the contract, and the purported oral modification of the contract is legally ineffective because it does not meet the requirements of Metropolitan Code § 4.24.020.

We have already concluded that the payment provisions in the contract between Laidlaw and the Metropolitan Government are unambiguous. Therefore, the parties were not required to resort to interpreting vague contractual terms but rather were required to perform in accordance with the contract's plain requirements. As we read the contract, it clearly provides that Laidlaw is entitled to be paid based on the weight of the fly ash removed and that Laidlaw is not entitled to collect the minimum charge for each container filled with fly ash. Thus, Laidlaw's assertion that Mr. Tucker agreed to pay Laidlaw a double minimum if it would haul away two containers of ash on each truck is not a contract interpretation claim but rather a contract modification claim.

It is well established that the terms of a written contract may be modified by an oral amendment. *See Co-Operative Stores Co. v. United States Fidelity Guar. Co.*, 137 Tenn. 609, 622, 195 S.W. 177, 180 (1917); *Galbreath v. Harris*, 811 S.W.2d 88, 91 (Tenn. Ct. App. 1990). Thus, contracting parties may, by their conduct, waive a requirement that contractual modifications must be in writing in order to be effective. *See Moore Constr. Co. v. Clarksville Dep't of Electricity*, 707 S.W.2d 1, 12 (Tenn.

---

[11]Of course, Laidlaw would be entitled to payment for the actual amount of fly ash loaded on a truck when the truck is carrying more then fifteen tons of fly ash. Since the costs of transporting the fly ash are relatively fixed, the purpose of the fifteen ton per load minimum is to enable Laidlaw to at least recapture its transportation costs when the loads of fly ash are light.

Ct. App. 1985). These principles apply to contracts with government entities but with two significant limitations. First, persons dealing with governmental officials are presumed to know the limitations of the official's authority. *See City of Lebanon v. Baird*, 756 S.W.2d 236, 245 (Tenn. 1988). Second, the governmental entity must have acted affirmatively to induce the contracting party to perform more than it was originally obligated to perform. *See Paduch v. City of Johnson City*, 896 S.W.2d 767, 772-73 (Tenn. 1995) (quoting *Bledsoe County v. McReynolds*, 703 S.W.2d 123, 125-26 (Tenn. 1985)); *City of Lebanon v. Baird*, 756 S.W.2d at 244.

Each of these limitations undermines the vitality of Laidlaw's estoppel claim. The reference to Metropolitan Code § 4.24.020 in the contract's modification clause put Laidlaw on notice that Mr. Tucker did not have the authority to modify the terms of the contract. This provision clearly conditions the effectiveness of a modification to the contract on the approval of the purchasing agent, the Legal Department, the Director of Finance, and the Mayor. Second, the purported "interpretation" of the contract agreed to by Mr. Tucker and Mr. Mastalerz did not require Laidlaw to undertake to perform the work required by the contract for less compensation than it was already entitled to receive. Under the contract, Laidlaw was entitled to be paid $205.60 for each ton of fly ash removed from the plant and was entitled to be paid for at least fifteen tons for every truck loaded with fly ash that left the plant. After Laidlaw agreed to place two containers on each truck leaving the plant rather than one, it was still receiving $205.60 for each ton of fly ash and was still entitled to be paid the fifteen-ton minimum when a truck was loaded with less than fifteen tons of fly ash.

## V.

We affirm the summary judgment dismissing Laidlaw's complaint against the Metropolitan Government and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to Laidlaw Environmental Services, Inc. and its surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:


_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION

                                     -12-

_____
BEN H. CANTRELL, JUDGE

# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

LAIDLAW ENVIRONMENTAL          )
SERVICES OF SOUTH CAROLINA,    )
INC.,                          )
                               )
    Plaintiff/Appellant,       )
                               )   Davidson Chancery
                               )   No. 95-2114-I
VS.                            )
                               )   Appeal No.
                               )   01A01-9610-CH-00479
THE METROPOLITAN GOVERNMENT    )
OF NASHVILLE AND DAVIDSON      )
COUNTY,                        )
                               )
    Defendant/Appellee.        )

## J U D G M E N T

This cause came on to be heard upon the record on appeal from the Davidson County Chancery Court, the briefs of the parties, and the arguments of counsel. Upon consideration of the entire record, this court finds and concludes that the trial court's judgment should be affirmed.

In accordance with the opinion filed contemporaneously with this judgment, it is, therefore, ordered, adjudged, and decreed that the trial court's judgment be and is hereby affirmed, that the cause be remanded to the trial court for further proceedings consistent with this court's opinion, and that the costs be taxed in the manner provided in this judgment.

It is further ordered that the costs of this appeal be taxed against Laidlaw Environmental Services, Inc., principal, and Thomas V. White, surety, for which execution may issue if necessary.

    ENTER, _____.

_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION

_____
BEN H. CANTRELL, JUDGE

_____
WILLIAM C. KOCH, JR., JUDGE