IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 9, 2001 Session

## TOMKATS CATERING, INC. v. RUTH E. JOHNSON, Commissioner of Revenue, State of Tennessee

Appeal from the Chancery Court for Davidson County
No. 98-828-II    Carol L. McCoy, Chancellor

---

No. M2000-03107-COA-R3-CV - Filed September 19, 2001

---

This is a sales tax case. The tax period is from December 1, 1990 through January 31, 1994. During this period TomKats, a catering business, charged its customers a fixed, per unit price for food, but provided optional services - waiters, bartender, bar backs, show chefs, valets - for an additional charge, which was billed separately. The Commissioner ruled that such optional services were a "part of the sale," and assessed a tax deficiency which TomKats paid and filed this action for a refund which was unavailing. The judgment is reversed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

WILLIAM H. INMAN, SR. J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, J.J., joined.

Charles A. Trost and Michael G. Stewart, Nashville, Tennessee, for the appellant, TomKats Catering, Inc.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Sean D. Clancy, Assistant Attorney General, for the appellee, Ruth E. Johnson, Commissioner of Revenue, State of Tennessee.

### OPINION

### I.

This action was filed March 18, 1999 seeking a refund of sales taxes in the amount of $21,552.00 from an assessment of $35,340.43. The basis of TomKats claim for refund is that its charges for optional services are not subject to sales tax under the authority of *Penske Truck Leasing Co. v. Huddleston*, 795 S.W.2d 669 (Tenn. 1990). The answer of the Commissioner offered little explication and generally denied the validity of the claim for refund.

## II.

The relevant facts are not controverted. As found by the Chancellor

> TomKats, the taxpayer, is a catering company which charges a fixed
> per unit price for all food items ordered by customers. When
> customers request that food be served buffet-syle, TomKats includes
> in the cost of the food to be served the cost of a single worker per
> buffet table. The worker is responsible for setting up the buffet
> equipment and food display, tending the buffet by refilling trays with
> food, and then packing up the buffet at the end of a given event. As
> the cost of the workers who set up buffets is part of the fixed price
> customers pay for food, TomKats, by collecting tax on said food,
> collects on the workers' services. Customers can order food without
> asking TomKats to provide "optional services," e.g., servers,
> bartender, bar backs, show checks, valet, or craft service attendants.
> Customers can also order just food without any servers. "Server" as
> set out in TomKats' invoices, is synonymous with "waiter" and is an
> individual who serves food either by passing trays, waiting tables or
> serving people along a buffet line. *During the tax years at issue,*
> *1990 to 1994, TomKats separately billed optional services performed*
> *by employee waiters, cooks, and servers.* (Emphases supplied).

The parties agree that there are no disputed material facts and that the case could properly
be resolved by summary judgment. Rule 56.03, Tenn. R. Civ. P.

The Chancellor found that TomKats decision to bill separately for optional servers [waiters]
who performed the same functions as servers under the basic contract was an unwarranted distinction
between taxable and non-taxable functions and denied the refund sought. TomKats appeals and
presents for review the issue of whether the court erred in holding that separately invoiced charges
for optional services were subject to sales tax. The issue being one of law, our review is *de novo*
with no presumption of correctness. ***Tenn. Farmers Mutual Ins. Co. v. Amer. Mutual Ins. Co.***, 840
S.W.2d 933 (Tenn. Ct. App. 1992).

## III.

Tennessee Code Annotated § 67-6-202 provides:

> For the exercise of the privilege of engaging in the business of selling
> tangible personal property at retail in this state, a tax is levied at the
> rate of six percent (6%) of the sales price of each item or article of
> tangible personal property when sold at retail.

Tennessee Code Annotated § 67-6-102 (26) defines "sales price" as:

> [t]he total amount for which a taxable service or tangible personal property is sold, including any services that are a part of the sale of tangible personal property . . .

TomKats argues that its optional services - waiters, bartenders, bar backs, show chefs, valets, etc., - are not taxable under the statutory scheme, see T.C.A. § 67-6-205 et seq., because these service contracts are severable from catering contracts. The Commissioner disagrees, arguing that such optional services are a part of the sale of tangible personal property and cannot be meaningfully separated from the sale of catered food. Relying on *Crescent Amusement Co. v. Carson*, 213 S.W.2d 27 (Tenn. 1948) the Chancellor agreed with the Commissioner's argument.

*Crescent* involved sales tax imposed on the leasing of movie reels. The taxpayer argued that the reels were merely expressions of the non-taxable services of actors and writers used in the making of the movie. This argument was rejected. The Supreme Court noted that the non-taxable services had become inseparable from the taxable reels which could not be ordered without the services it embodied. We agree with TomKats that *Crescent* is inapposite to the case at Bar, which is controlled by *Penske*.

*Penske* leased its vehicles for a fixed rate plus a fixed mileage rate that included maintenance costs. Under the lease and service agreement a lessee was given the option of purchasing fuel for the leased vehicles from Penske. Revenues generated by the fuel purchase option are accounted for by Penske's fuel sales division and are billed separately from the truck lease revenues.

The Commissioner assessed sales taxes on fuel billings, following the principle announced in *Magnavox Consumer Elec. v. King*, 707 S.W.2d 504 (Tenn. 1986) that if fuel costs are included in the agreed rental price of equipment, the entire lease payment is subject to the use tax.

The Court, in *Penske*, disagreed, because the parties intended that the lease of equipment was "separate and apart from the fuel sales agreement" though they were included in the same document. The Court noted that the agreement for the lease of equipment, and its cost, and the agreement covering fuel sales are readily distinguishable, and that neither agreement was dependant upon the other. Since gasoline is exempt from sales tax, the assessment was invalid.

Applying the rationale of *Penske* to the case at Bar concludes the issue. The catering contracts were separable and divisible; the optional services were genuinely so and only food was sold by TomKats at fixed per-unit prices. Any concern that the difficulties presented by a requirement that the cost of an optional service must be separated out of the package before a sales or use tax is imposed does not appear to be overarching. The "readily distinguishable" test of *Penske* is whether the charges for a taxable item, and for a non-taxable item, can be distinguished *prima facie.*

If a catering customer orders a 'show chef,' for instance, this optional service is documented by the Agreement. It is not disputed that every single sale of optional service was separately billed, and thus readily distinguishable from the sale of food. Hence, such sales must be treated separately for sales tax purposes.

The judgment is reversed and the case is remanded to the trial court for all appropriate purposes including the entry of judgment for refund. Costs will be paid by defendant, Ruth E. Johnson, Commissioner of Revenue, State of Tennessee.

_____
WILLIAM H. INMAN, SENIOR JUDGE